UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
DWAYNE BRUMMELL, *individually and*        REPORT AND
*on behalf of all other persons similarly*       <u>RECOMMENDATION</u>
*situated*,

                        Plaintiff,        19 CV 5488(FB)(RML)

         -against-

K1 HVAC INC. and KRISHNADAT SING,

                  Defendants.
-------------------------------------------------------X
LEVY, United States Magistrate Judge:

        By orders dated May 1, 2020, and December 21, 2020, the Honorable Frederic

Block, Senior United States District Judge, referred plaintiff's motions for default judgment to

me for report and recommendation.  For the reasons stated below, I respectfully recommend that

plaintiff's motions be granted with respect to defendants K1 HVAC Inc. and Krishnadat Sing.  I

further recommend that plaintiff be awarded $44,705.26 in damages, plus pre-judgment and

post-judgment interest.

## BACKGROUND AND FACTS

        Defendant K1 HVAC Inc. ("K1") is alleged to be a New York business

corporation that has over eleven employees and conducts heating, ventilation, and air

conditioning ("HVAC") repair and installation.  (Complaint, dated Sept. 27, 2019 ("Compl."),

Dkt. No. 1, ¶¶ 6, 10; <u>see also</u> Declaration of Dwayne Brummell, dated Apr. 30, 2020

("Brummell Decl."), Dkt. No. 15, ¶ 2; <u>see generally</u> Declaration of Dwayne Brummell, dated

Dec. 21, 2020 ("Second Brummell Decl."), Dkt. No. 24.)  K1 is located at 107-25 116th Street

in Richmond Hill, New York.  (Compl. ¶ 10.)  Defendant Krishnadat Sing ("Sing") is alleged to

own, operate, and control K1's day-to-day operations and management.  (<u>Id.</u> ¶ 8.)

Plaintiff Dwayne Brummell ("plaintiff") commenced this wage and hour action on September 27, 2019, asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. and the New York Labor Law ("NYLL").  (See Compl. ¶¶ 2-3.)  Plaintiff was employed by defendants as an HVAC Technician from August 7, 2018 to January 14, 2019. (Id. ¶ 12.)

Plaintiff alleges that he worked more than forty hours per week for twenty-three weeks, that his primary duties included installing and repairing air conditioners, and that defendants willfully failed to pay him at or above the statutory minimum wage and failed to pay him overtime wages.  (Id. ¶¶ 13-14, 23-24.)  Plaintiff also alleges that defendants failed to provide him with the statutorily required wage statements and wage notices.  (Id. ¶¶ 26, 27.)

Despite being properly served with the summons and complaint, neither defendant has answered or moved with respect to the complaint.  (See Affidavit of Service of Robert Guyette, sworn to Oct. 4, 2019, Dkt. No. 5; Affidavit of Service of Bashar Judeh, sworn to Aug. 11, 2020 ("Judeh Aff."), Dkt. No. 17.[1])  Pursuant to Federal Rule of Civil Procedure 55(a), plaintiff moved for entry of default for defendant K1 on January 13, 2020, and for defendant Sing on October 8, 2020.  (See Request for Certificate of Default, dated Jan. 13, 2020, Dkt. No. 7; Request for Certificate of Default, dated Oct. 8, 2020, Dkt. No. 19.)  On January 21, 2020 and October 15, 2020, respectively, the Clerk of the Court entered the defaults

---

[1] In the Affidavit of Service, defendant Sing's name is misspelled as "Sign."  (See Judeh Aff.) However, the affidavit of plaintiff's process server "establishes a presumption that service is proper."  Onewest Bank N.A. v. Elliott, No. 15 CV 4395, 2016 WL 3766062 (E.D.N.Y. May 23, 2016), report and recommendation adopted, No. 15 CV 4395, 2016 WL 3746564 (E.D.N.Y. July 8, 2016).  A minor, amendable misspelling is a "harmless error" and is insufficient to rebut that presumption.  See, e.g., Alston v. Quik Park Garage Corp., No. 95 CV 957, 1996 WL 547018, at *1 (S.D.N.Y. Sept. 26, 1996).

of defendants K1 and Sing.  (See Clerk's Entry of Default, dated Jan.13, 2020, Dkt. No. 8; Clerk's Entry of Default, dated Oct. 15, 2020, Dkt. No. 20.)

Plaintiff filed separate motions for default judgment against defendants K1 and Sing.  (See Motion for Default Judgment, dated Apr. 30, 2020, Dkt. No. 12; Motion for Default Judgment, dated Dec. 21, 2020, Dkt. No. 21.)  Plaintiff asserts claims under the FLSA and the NYLL for willful failure to pay overtime premium pay.  (See Compl. ¶¶ 49, 58.)  Plaintiff additionally asserts claims under the NYLL for failure to pay the minimum wage and failure to provide proper wage notices and wage statements.  (See id. ¶¶ 41, 61, 65.)  Plaintiff seeks unpaid wages, liquidated damages, pre- and post- judgment interest, attorney's fees, and costs. (See id. ¶¶ 2-3.)

### DISCUSSION

#### A.  Liability

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a default judgment is entered, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [the plaintiff's] allegations establish [the defendants'] liability as a matter of law."  Id.

Plaintiff has sufficiently pleaded factual allegations that give rise to liability for unpaid overtime wages under the FLSA and NYLL.  (See Compl. ¶¶ 2, 3.)   Plaintiff has also sufficiently pleaded claims under the NYLL for failure to pay the minimum wage and failure to provide wage statements and wage notices.  (See id. ¶ 3.)  The extent to which he can recover damages from the defaulting defendants based upon these violations depends on whether: (1) his

3

claims were timely; (2) he is a covered employee under the FLSA and the NYLL; and (3) defendants were his employers under the FLSA and NYLL.

      1.  <u>Timeliness</u>

For claims to be timely under the FLSA, they must have arisen within the two years prior to the filing of complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, plaintiff alleges that defendants willfully violated the FLSA by failing to pay him overtime wages.  (Compl. ¶¶ 24, 49.)  Defendants have waived any affirmative defense based on the statute of limitations by virtue of their default.  <u>See</u> <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (citing <u>Day v. McDonough</u>, 547 U.S. 198, 202 (2006); <u>Davis v. Bryan</u>, 810 F.2d 42, 44 (2d Cir. 1987); <u>Archie v. Grand Cent. P'ship</u>, 997 F. Supp. 504, 536 (S.D.N.Y. 1998)).  And plaintiff's allegation that defendants "were aware" of their failure to pay a minimum wage establishes willfulness.  (Compl. ¶ 50); <u>see</u> <u>Moran v. GTL Constr., LLC</u>, No. 06 CV 168, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007) ("[F]or the purposes of pleading, willfulness qualifies as a factual state of mind falling under Fed. R. Civ. P. 9(b), which states the 'condition of mind of a person may be averred generally.'").  Because plaintiff alleges that he was employed by defendants and that non-payment of overtime wages occurred between August 7, 2018 and January 14, 2019 (<u>see</u> Compl. ¶ 12), within three years prior to the filing of the complaint, his claim is timely under the FLSA.

For plaintiff's claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint.  <u>See</u> N.Y. Lab. L. §§ 198(3); 663(3).  Because plaintiff alleges that he was employed by defendants and that underpayment of wages, wage notice violations, and wage statement violations occurred after September 27, 2013, his claims under the NYLL are timely.  (Compl. ¶¶ 12, 41, 61, 65.)

2.  <u>Employee Coverage Under the FLSA and NYLL</u>

Because the minimum wage and overtime provisions of the FLSA and the NYLL apply only to employees of covered employers, plaintiff must show that (1) he was defendants' employee, and (2) defendants were employers subject to the coverage of each statute.  First, under the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work."  29 U.S.C. §§ 203(e)(1), (g). Here, plaintiff has adequately pleaded that he was an employee under the FLSA, to the extent he was hired to work as a full-time HVAC Technician by defendants K1 and Sing, worked six days a week, and was paid in cash weekly.  (<u>See</u> Compl. ¶¶ 12-14; Brummell Decl. ¶¶ 6, 9.)  In considering whether an individual is an employee under the NYLL, courts often look to whether a worker: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." <u>Fermin v. Las Delicias Peruanas Rest. Inc.</u>, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting <u>Byong v. Cipriani Group, Inc.</u>, 1 N.Y.3d 193, 198 (2003)). As alleged in the complaint, plaintiff worked a scheduled shift for a minimum number of hours on specified days as determined by defendants and was on defendants' weekly cash payroll. (Compl. ¶¶ 11, 13, 17, 18; Brummell Decl. ¶¶ 4, 6.)  These facts establish that plaintiff is also an employee under the NYLL.  <u>Fermin</u>, 93 F. Supp. 3d at 34 (finding allegations of fixed hours, schedules, and rates of pay sufficient to prove plaintiffs' status as employees under NYLL).

Second, plaintiff's allegations demonstrate that defendants were his employers. To establish that defendants are employers subject to the FLSA and NYLL, plaintiff must show that defendants "possessed the power to control" his activities as a worker considering the

totality of pertinent "economic realit[ies]."[2]  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139

(2d Cir. 1999) (citation and quotation marks omitted).  To evaluate the "economic reality" of an

alleged employee-employer relationship, courts look to various factors, none of which is

individually dispositive.  Id.  These factors include "whether the alleged employer (1) had the

power to hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records."  Id.  In addition, the FLSA requires employees to show their employer

was an enterprise engaged in interstate commerce *or* that their work as employees regularly

involved them in interstate commerce.  See 29 U.S.C. § 206(a).

> Here, plaintiff's allegations implicate all four factors listed above, thus

substantiating an "economic reality" in which defendants "possessed the power to control" his

activities.  Herman, 172 F.3d at 139.  First, plaintiff asserts that both defendants had the power to

hire and fire him.  (Compl. ¶¶ 9, 11; Second Brummell Decl. ¶ 10.)  Second, he avers that both

defendants controlled his work schedule and conditions of employment.  (See Compl. ¶¶ 9, 11;

Brummell Decl. ¶¶ 3-5; Second Brummell Decl. ¶¶ 2, 4, 6.)  Further, plaintiff alleges that

defendant Sing had the power to set his work schedule, including the time and location of jobs,

employee drop-offs and pickups, and the responsibility to transport materials.  (Compl. ¶ 11;

Second Brummell Decl. ¶¶ 2-5.)  Plaintiff also alleges that Sing supervised the work performed

at the job sites for quality and progress.  (Second Brummell Decl. ¶ 6.)  Third, plaintiff asserts

that both defendants had the authority to determine and change his payment rate and method of

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018); Fermin, 93 F. Supp. 3d at 37.

pay.  (Compl. ¶ 9; Brummell Decl. ¶¶ 9-10; Second Brummell Decl. ¶¶ 7-9.)  And finally,

plaintiff alleges that both defendants "kept at least some records regarding [his] employment"

and Sing, specifically, kept "some records about our employment, the work we did and the

locations where we worked."  (Compl. ¶ 9; Second Brummell Decl. ¶ 8.)

   Plaintiff has also satisfied the FLSA's interstate commerce requirement.  To show

he was "employed in an enterprise engaged in commerce," 29 U.S.C. § 206(a), plaintiff alleges

that defendant K1 had gross annual revenue of at least $500,000, and that it was engaged in

interstate commerce.  (See Compl. ¶ 7.)  While plaintiff's allegations are conclusory insofar as

they restate the statutory definition of enterprise coverage while only providing the vague factual

allegations that employees "engaged in [interstate] commerce" by handling "goods and materials

that have been produced for and moved in commerce," including but not limited to, "tools,

equipment and HVAC parts" (see Compl. ¶¶ 7, 14; see also Brummell Decl. ¶ 3; Second

Brummell Decl. ¶¶ 3-5), multiple courts in this district have held that similarly conclusory

allegations of enterprise coverage may establish liability in a motion for default judgment where

plaintiff handled goods or items that originated out-of-state.  See, e.g., Remache v. Mac Hudson

Grp., No. 14 CV 3118, 2018 WL 4573072, at *4 (E.D.N.Y. Sept. 7, 2018) (holding that a

construction business is an enterprise that is "typically involved in interstate commerce"), report

and recommendation adopted, 2018 WL 4568860 (E.D.N.Y. Sept. 24, 2018); Boutros v. JTC

Painting & Decorating Corp., 989 F. Supp. 2d 281, 284 (S.D.N.Y. 2013) (finding defendant

subject to enterprise coverage where plaintiffs alleged that they used "tools, paint, and other

materials that travel in interstate commerce"); Rodriguez v. Almighty Cleaning, Inc., 784 F.

Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that the interstate commerce test "is met if Plaintiffs

merely handled supplies or equipment that originated out-of-state . . . . The Court finds it logical

to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York.").[3]   I agree with courts that have adopted this approach, and I find that it is reasonable to infer that the tools, equipment, and HVAC parts allegedly handled by defendants' employees "have been moved in or produced for [interstate] commerce."  (Compl. ¶ 13); 29 U.S.C. § 203(s)(1)(A)(i).  Plaintiff has therefore sufficiently established that he is a covered employee under the FLSA.

3.   Joint and Several Liability

Finally, plaintiff alleges sufficient facts to establish that defendants were a single integrated enterprise for the purposes of joint and several liability under both the FLSA and NYLL.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages."  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).  "In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants."  Nuriddinov v. Masada III, Inc., No. 15 CV 5875, 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted).  Here, plaintiff states that defendant Sing owned K1 and operated the business out of his residence.  (Compl. ¶ 8; Second Brummell Decl. ¶ 3.)  Plaintiff further asserts that Sing often stored HVAC parts and materials, including AC condensers, furnaces and ductwork, in his

_____

[3] But see Perez v. Queens Boro Yang Cleaner, Inc., No. 14 CV 7310, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) ("While some judges in this district disagree, and have granted default judgments notwithstanding a similar lack of specificity in other cases, I conclude that requiring non-conclusory allegations is more consonant with applicable case law concerning pleading requirements, and that it does not frustrate the FLSA's remedial purpose to require a plaintiff seeking the statute's protection to explain in her pleading just what it is about her employer's business that brings it within the law's ambit." (footnote omitted)), report and recommendation adopted, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).

backyard; required employees to start their workdays at his house; and regularly sent employees to pick up materials and parts from his house to transport them to job sites.  (Second Brummell Decl. ¶¶ 3-5.)  Additionally, as previously discussed, both K1 and Sing had the power to hire and fire employees, set work schedules, establish work conditions, and determine pay rates.  (See Compl. ¶¶ 9, 11; Brummell Decl. ¶¶ 3-5; Second Brummell Decl. ¶¶ 2, 4, 6.)  These allegations sufficiently establish defendants' common ownership, management, and control of labor relations, which is "the central concern. . . underlying the single employer doctrine."  Marin v. APU Foods Corp., No. 17 CV 3224, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (internal quotation marks and citations omitted).  Therefore, I respectfully recommend that defendants be held jointly and severally liable.

B. Damages

Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'"  Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."  Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974).  "The burden is on the plaintiff to establish [his] entitlement to recovery."  Bravado Int'l Group Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).  Plaintiff requests damages in the amount of $61,995.48.  This figure comprises $13,648.83 in compensatory damages, $13,648.83 in liquidated damages, $2,317.82 in pre-judgment interest, $10,000 in New York Labor Law record-keeping violations, $21,840 in attorney's fees, and $540 in costs.  (See Memorandum in Support of Default Judgment, dated Dec. 21, 2020 ("Pl.'s Second

Mem."), Dkt. No. 22 at 13-21; see also Memorandum in Support of Default Judgment, dated

Apr. 30, 2020 ("Pl.'s Mem."), Dkt. No. 13 at 14-17.)

      1.  <u>Minimum Wage Compensation</u>

In the absence of any employment records and in light of defendants' default,

plaintiff's recollections suffice to establish damages for unpaid wages.  "[W]hen an employer

fails to maintain accurate records or where. . . no records have been produced as a consequence

of a defendant's default, courts have held that the 'plaintiff's recollection and estimates of hours

worked are presumed to be correct.'"  <u>Gunawan</u>, 897 F. Supp. 2d at 88 (quoting <u>Zeng Liu v. Jen

Chu Fashion Corp.</u>, No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); <u>see also

Kim v. Kum Gang, Inc.</u>, No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015)

(noting that where an employer fails to maintain records of wages and hours, plaintiffs "need

only prove that they performed work for which they were not properly compensated and produce

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference") (internal quotation marks and citations omitted); <u>Hart v. Rick's Cabaret Int'l, Inc.</u>,

60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to

avoid, or reduce, their liability simply because they kept shoddy records").

Here, plaintiff seeks damages for twenty-three workweeks.  (Pl.'s Mem. at 1, 14;

Pl.'s Second Mem. at 1, 17.)  In his declaration, plaintiff states that, at a minimum, he worked six

days per week, from 6:45 a.m. to 5:00 p.m. (Brummell Decl. ¶ 4.)  At least two of those days, he

worked until 6:00 p.m., working for a minimum average of 64.25 hours per week.[4]  (<u>Id.</u>)

---

[4] Plaintiff's complaint alleges that he worked an average of 58.5 hours per week over the course
of his employment.  (<u>See</u> Compl. ¶¶ 13, 21.)  However, in his declaration, plaintiff states that he
worked an average of 64.25 hours per week.  (Brummell Decl. ¶ 7.)  Because the declaration is
offered in place of live testimony, this court relies on plaintiff's statements therein to determine
damages.

Additionally, he states that there were busier weeks when he would work until 10:00 p.m., which occurred at least once a week, for three weeks a month, every other month, bringing the total to 70.5 hours for those weeks.  (Id. ¶ 5.)  Plaintiff states that he was paid $100 in cash per day regardless of how many hours he worked.  (Id. ¶¶ 6, 10.)  As such, he states that his hourly rate was $10.26 during 58.5-hour weeks, $9.92 during 60.5-hour weeks, and $8.50 during 70.5-hour weeks.  (Id. ¶ 9.)  Thus, because plaintiff worked a minimum of 58.5 hours per week in 2018 and 2019 and was compensated $600 weekly, regardless of how many hours he worked, his hourly wage falls below the New York minimum wage for both years.

The FLSA requires defendants to pay plaintiff a minimum hourly wage of $7.25 at all relevant times.  29 U.S.C. § 206(a)(1).  But New York law obligated defendants to pay plaintiff a minimum hourly wage of $13.00 in 2018 and $15.00 in 2019.  N.Y. LAB. LAW § 652(a)(i).[5]  Because New York's wage is higher, plaintiff may recover that amount.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.  Based on plaintiff's assertion that he worked for an average of 64.25 hours per week, plaintiff should have earned a total of $19,467.75 over the course of his employment in minimum wages.  (Brummell Decl. ¶ 7.)  Plaintiff was paid $600 per week for his twenty-three weeks of employment, or $13,800.  Accordingly, I recommend that plaintiff be awarded $5,667.75 for the shortfall in minimum wages.[6]

[5] Because plaintiff alleged that defendants employed at least eleven (11) employees at all times during his employment, defendants qualify as "large employers" under the NYLL.  (Compl. ¶ 15; Brummell Decl. ¶ 2); N.Y. LAB. LAW § 652(a).

[6] I calculated this award amount through the following equation: (21 weeks x (64.25 average hours worked x $13 minimum wage) + (2 weeks x (64.25 average hours worked x $15 minimum wage)) – (23 weeks x $600 in actual wages paid) = $5,667.75.

2.  Overtime Compensation

Plaintiff is also entitled to overtime compensation under both the FLSA and NYLL at the rate of one and one-half times his regular rate of pay for the hours he worked in excess of forty during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES T. & REGS. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but a plaintiff may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).  Because plaintiff's recovery will be greater under the NYLL, damages will be calculated based on his NYLL unpaid wages claim.

Plaintiff alleges that he was not paid overtime for any of the twenty-three weeks he was employed by defendants, despite working an average of 23.25 overtime hours per week. (Compl. ¶ 24; Brummell Decl. ¶¶ 7-8.)  Plaintiff is thus entitled to 534.75 hours of overtime compensation.  Overtime wages — "time and a half pay"— are fifty percent more than an employee's regular rate of pay.  As such, plaintiff should have received pay of $19.50 in 2018 and $22.50 in 2019 for each hour worked in excess of forty per workweek.  Plaintiff's award of $5,667.75 already includes one hundred percent of the minimum wage due for all hours worked in his twenty-three workweeks.  Therefore, he is still due fifty percent of his regular rate of pay

for the 534.75 hours of overtime worked —$6.50 in 2018 and $9.50 in 2019.  Accordingly, I recommend that plaintiff be awarded $3,770.88 in unpaid overtime compensation.[7]

### 3. Liquidated Damages

Plaintiff additionally seeks an award of liquidated damages under both the FLSA and NYLL.  (See Compl. ¶¶ 43, 53, 59; Pl.'s Mem. at 13; Pl.'s Second Mem. at 15.)  The FLSA and NYLL both allow for liquidated damages awards equaling one hundred percent of the wages due.  See 29 U.S.C. § 260; N.Y. LAB. LAW § 663(1).  However, plaintiff cannot recover cumulative liquidated damages under both statutes for the same time period.  See Rana v. Islam, 887 F.3d 118, 119 (2d Cir. 2018) (per curiam).  When two forms of damages are available for the same violation, courts have generally awarded the higher of the two.  See id.; Man Wei Shiu v. New Peking Taste Inc., No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y. Feb. 19, 2014).  Thus, I respectfully recommend that plaintiff be awarded liquidated damages under the NYLL.

Under the NYLL, "liquidated damages are presumed unless defendants can show subjective good faith."  Zubair v. EnTech Eng'g, P.C., 900 F. Supp. 2d 355, 360 n.3 (S.D.N.Y. 2012); see N.Y. LAB. LAW § 663(1).  As defendants have defaulted, they have not established good faith to rebut the liquidated damages presumption.  Accordingly, I respectfully recommend that plaintiff be awarded $9,438.63 in liquidated damages.

### 4. Wage Notice

Plaintiff further requests $5,000 in statutory damages for defendants' failure to provide a wage notice in compliance with New York's Wage Theft Prevention Act ("WTPA"), which requires employers to "provide [their] employees, in writing . . . a notice containing . . .

---

[7] I calculated this award amount through the following equation: (21 weeks x (24.25 hours of overtime x $6.50)) + (2 weeks (24.25 hours of overtime x $9.50)) = $3,770.88.

the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances."  (Pl.'s Mem. at 16; Pl.'s Second Mem. at 16.); N.Y. LAB. LAW § 195(1).  Plaintiff states that he did not receive a wage notice when he was hired or at any other point during his employment.  (Brummell Decl. ¶ 13.)  Statutory damages under the WTPA are $50 per day, up to a maximum of $5,000.  N.Y. LAB. LAW § 198(1-b)).  Since plaintiff worked more than 100 days, I find that he is entitled to $5,000 for failure to provide a wage notice upon hiring.

6. Wage Statements

In addition to the wage notice requirement, "[e]mployers are also required to provide employees with a wage statement with each payment of wages."  Pastor v. Alice Cleaners, Inc., 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. LAW § 195(3)).  Each wage statement must list, among other things, the dates of work covered by the payment of wages, the rate of pay and basis thereof, gross wages, applicable deductions, and allowances claimed as part of the minimum wage.  N.Y. LAB LAW § 195(3).  Plaintiff states that he never received wage statements with his pay.  (Brummell Decl. ¶ 12.)  As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000."  N.Y. LAB. LAW § 198(1–d)).  Since plaintiff worked more than twenty days, I find that he is entitled to $5,000 for wage statement violations.

7. Pre-judgment Interest

Plaintiff also requests pre-judgment interest under the NYLL.  (Pl.'s Mem. at 16; Pl.'s Second Mem. at 16.); see N.Y. LAB. LAW § 663.  Plaintiff may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two distinct purposes of "compensate[ing] a plaintiff for the loss of use of money" and "a penalty,"

respectively.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation

omitted); see also Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 243 (S.D.N.Y.

2020).  The calculation of pre-judgment interest is based on unpaid wages, not liquidated

damages.  Fermin, 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (quoting Mejia v. East Manor USA

Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), report and

recommendation adopted, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor is pre-judgment

interest calculated on statutory damages for failure to provide wage notices and statements.  See

Feuer v. Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan.

21, 2020) (citing Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017),

aff'd, 752 F. App'x 33 (2d Cir. 2018)).

        The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.

Where damages were incurred at various times, interest may be calculated from a single

reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a

reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93

F. Supp. 3d at 49; Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9

(S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y.

May 24, 2011).

        Here, damages were incurred from August 7, 2018 to January 14, 2019.  (Compl.

¶ 12; Brummell Decl. ¶ 1; Second Brummell Decl. ¶ 1.)  I determine that the midpoint of this

period is October 27, 2018.  I therefore respectfully recommend that pre-judgment interest at the

rate of nine percent per annum be awarded on plaintiff's unpaid minimum wages and overtime

wages—totaling $9,438.63—from October 27, 2018 to the date of the entry of judgment, which

amounts to a per diem interest rate of $2.33 (($9,438.63 x .09 annual rate)/365 days).

7. <u>Post-judgment Interest</u>

Plaintiff is also entitled to post-judgment interest under 28 U.S.C. § 1961(a).

Section 1961 provides that "interest shall be allowed on any money judgment in a civil case

recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated

"from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant

maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System,

for the calendar week preceding[ ] the date of the judgment." <u>Id.</u> Thus, I respectfully

recommend that plaintiff be awarded statutory post-judgment interest. <u>See</u> <u>Fermin</u>, 93 F. Supp

3d at 53 (finding that post-judgment interest is mandatory).

9. <u>Attorney's Fees and Costs</u>

As the prevailing party, plaintiff is entitled to recover reasonable attorney's fees

and costs under both the FLSA and the NYLL. <u>See</u> 29 U.S.C. § 216(b), N.Y. LAB. LAW §§

198, 663(1). Plaintiff seeks an award of attorney's fees in the amount of $21,840 and $540 in

costs. (<u>See</u> Pl.'s Second Mem. at 21; Time Entries, annexed as Ex. 3 to the Declaration of

Douglas B. Lipsky, Esq., dated Dec. 31, 2020 ("Lipsky Decl."), Dkt. No. 23-3.)

District courts have "considerable discretion in determining what constitutes

reasonable attorney's fees in a given case." <u>Barfield v. New York City Health & Hosps. Corp.</u>,

537 F.3d 132, 151 (2d Cir. 2008). When exercising their discretion to determine the

reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee"

standard. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 183,

190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the

product of a reasonable hourly rate and the reasonable number of hours required by the case."

<u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and

contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d

Cir. 2011) (per curiam); Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010);

N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re

Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiff has satisfied this requirement.  (See

Time Entries.)

   The court next assesses whether plaintiff's counsel requests a reasonable hourly

rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing]

in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the

case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on

"rates prevailing in the community for similar services of lawyers of reasonably comparable

skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d

Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  A judge may determine

prevailing rates based on evidence presented or his or her own knowledge of rates charged in

the community.  Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d

Cir. 1989).  The "community" is generally considered to be the district where the court sits.  See

Arbor Hill, 522 F.3d at 190.  Further, "the nature of representation and type of work involved in

a case are critical ingredients in determining the 'reasonable' hourly rate."  Id. at 184 n.2

(citations omitted).

   Plaintiff's counsel requests hourly rates of $400 for Douglas Lipsky and $300 for

Milana Dostanitch.  (See Time Entries.)  I find these rates to be reasonable.  Mr. Lipsky is a

partner at Lipsky Lowe LLP and has practiced employment law for over seventeen years.  (Pl.'s

Second Mem. at 19; Pl.'s Mem. at 18.)  Ms. Dostanitch is a sixth-year associate who has

specialized in employment law since she began practicing.  (Pl.'s Second Mem. at 20; Pl.'s

17

Mem. at 19.)  Rates of $400 per hour and $300 per hour, respectively, are commensurate with the rates routinely awarded in this district to attorneys with comparable backgrounds and experience.  See, e.g., Lopez v. 1923 Sneaker, Inc., No. 18 CV 3828, 2021 WL 1845057 (E.D.N.Y. Mar. 5, 2021) (awarding hourly rate of $375 for attorney with eighteen years of experience and $275 for attorney with nine years of experience), report and recommendation adopted, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); Gunter v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 1804, 2021 WL 966147 (E.D.N.Y. Feb. 25, 2021) (finding rate of $375 for an attorney with thirteen years of experience reasonable), report and recommendation adopted, 2021 WL 964921 (E.D.N.Y. Mar. 15, 2021); Godwin v. Buka New York Corp., No. 20 CV 969, 2021 WL 612336, at *13 (E.D.N.Y. Feb. 17, 2021) (finding rate of $400 per hour for partner reasonable); Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (noting that, in this district, courts routinely approve hourly rates of  $200 to $450 for partners and $200 to $325 for senior associates), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020); Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 126, 2019 WL 3937126, at *15 (E.D.N.Y. July 3, 2019) (awarding $250 per hour to attorney with eight years of experience in a default judgment FLSA case).

The court next looks to the reasonableness of the hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed,

18

a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v.

Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The court may exclude those hours that it finds

excessive, redundant, or otherwise unnecessary.  See Gordon v. Site 16/17 Dev., LLC, No. 11

CV 427, 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011).  In lieu of an itemized reduction,

the court may make an across-the-board percentage reduction.  See Kirsch v. Fleet Street, Ltd.,

148 F.3d 149, 173 (2d Cir. 1998).

   Here, plaintiff's counsel seeks compensation for 68.5 hours of attorney work

(55.6 hours for Ms. Dostanitch and 12.9 hours for Mr. Lipsky).  (Pl.'s Second Mem. at 21; see

Time Entries.)  I find the claimed number of hours excessive.[8]  See, e.g., Xin Long Lin v. New

Fresca Tortillas, Inc., No. 18 CV 3246, 2019 WL 3716199 (E.D.N.Y. May 1, 2019) (finding

fifty-eight hours of billed attorney work "grossly excessive" in a default judgment FLSA

case), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019);

Rodriguez v. Yayo Rest. Corp., No. 18 CV 4310, 2019 WL 4482032 (E.D.N.Y. Aug. 23, 2019)

(finding 7.4 hours of billed attorney work reasonable in a default judgment FLSA case), report

and recommendation adopted, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019);

Fermin, 93 F. Supp. 3d (accepting 26.4 hours of billed attorney work as reasonable in a default

judgment FLSA case).  Indeed, this is a routine wage and hour default case and "counsel [should

be able to] draw on the experience of litigating many similar cases in this court."  Koszkos v.

Janton Indus., Inc., No. 15 CV 1700, 2016 WL 4444329, at *8-9 (E.D.N.Y. Aug. 3,

2016) (finding 76.4 hours excessive for a similar case, and reducing fees by thirty

percent), report and recommendation adopted, 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016); see

---

[8] For example, Douglas Lipsky spent more than seven hours reviewing and revising documents
and many of the time entries for both lawyers are duplicative.  (See Time Entries).

also Morales v. B&M Gen. Renovation Inc., No. 14 CV 7290, 2016 WL 1266624, at *12 (E.D.N.Y. Mar. 9, 2016) (finding sixty-three hours excessive for a similar case, and reducing fees by ten percent), report and recommendation adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016). For cases with a similar procedural posture, courts have found a maximum of fifty-five hours total to be reasonable. See Morales, 2016 WL 1266624, at *12 (citing cases); Maldonado, 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012) (noting that "the high-end number of hours" spent on such cases "is no more than 55 hours total"). Thus, a thirty-percent reduction in hours is appropriate, leading to a total of 47.95 hours. Accordingly, I respectfully recommend that plaintiff be awarded $15,288 for attorney's fees.[9]

Plaintiff additionally requests compensation for $540 in costs, representing $400 for this court's filing fee and $140 in service of process fees. (See Attorney Expense Records, annexed as Ex. 4 to the Lipsky Decl.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiff has submitted sufficient documentary evidence for these costs. (See Attorney Expense Records.) Accordingly, I find plaintiff's requested costs to be reasonable out-of-pocket expenses.

### CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motions for default judgment be granted as to defendants K1 HVAC Inc. and Krishnadat Sing, jointly and

---

[9] I calculated this amount through the following equation: (55.6 hours x .70) x $300 hourly rate)) + (12.9 hours x .70) x $400 hourly rate)) = $15,288.

severally.  In terms of damages, I recommend that plaintiff be awarded $44,705.26, consisting of $5,667.75 in unpaid minimum wage compensation, $3,770.88 in unpaid overtime wages, $9,438.63 in liquidated damages, $10,000 for wage notice and wage statement violations, $15,288 in attorney's fees, and $540 in costs, plus pre-judgment and post-judgment interest.

Any objections to this report and recommendation must be filed electronically or with the Clerk of Court, with courtesy copies to Judge Block and to my chambers, within fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
          August 13, 2021

21